## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *JEANNIE PROVENCHER,* | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 08-31-P-H* |
| | ) | |
| *T&M MORTGAGE SOLUTIONS, INC.,* | ) | |
| *et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

### RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS

The defendants, T&M Mortgage Solutions, Inc., Freeway Investments, Quality Investments, LLC, Judith K. Streeter, The Judith K. Streeter Trust Dated 10/28/92, Todd Johnson, Sr., and Shawn Holt, move to dismiss the plaintiff's complaint, which alleges eighteen counts arising out of two financial transactions. I recommend that the court grant the motion in part.

### I.   Applicable Legal Standard

The motion invokes Fed. R. Civ. P. 12(b)(6). Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion")[1] (Docket No. 7) at 1. As the Supreme Court recently has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[1] After this motion was filed, the plaintiff filed a motion for leave to file a second amended complaint (Docket No. 13), which was granted without objection (Docket No. 14). The defendants have taken the position that the changes in the latest version of the complaint do not affect the arguments made in this motion. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 18) at 1-2. The plaintiff has not challenged the defendants' contention.

> conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[2]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id.* "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II.  Factual Background

The second amended complaint includes the following relevant factual allegations. Sometime prior to December 20, 2004, defendants T&M Mortgage Solutions, Inc. ("T&M") and Shawn Holt arranged a loan from defendant Judith K. Streeter and/or defendant Judith K. Streeter Revocable Trust Dated 10/28/92 (the "Streeter Trust") to the plaintiff. Plaintiff's Second Amended Complaint ("Complaint") (Docket No. 15) ¶ 8. On or about December 20, 2004, the plaintiff executed and

---

[2] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

delivered a promissory note in the principal amount of $60,000 (the "Streeter note") and a mortgage deed, security agreement, and financing statement on her home in North Berwick, Maine. *Id*. ¶ 9. Prior to the closing of this loan (the "Streeter loan"), the plaintiff had acquired sole ownership of her home. *Id*. ¶ 10.

At all relevant times, the Town of North Berwick intended that the plaintiff continue to retain title to her home despite any nonpayment of municipal taxes or the recording of tax liens in the Registry of Deeds. *Id*. ¶ 11. The Town of North Berwick waived any automatic foreclosure rights it may have had with respect to tax lien mortgages on the plaintiff's home. *Id*. ¶ 12.

At the closing of the Streeter loan, the plaintiff paid closing costs, loan broker fees, and other charges totaling almost 20% of the loan amount. *Id*. ¶ 13. The Streeter loan was a high-rate, high-fee mortgage within the meaning of that term under the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"), and the Maine Consumer Credit Code, 9-A M.R.S.A. §§1-101, *et seq*. ("MCCC"), because (a) the annual percentage rate exceeded by more than 8% the yield on Treasury securities having a comparable period of maturity on the fifteenth day of the month immediately preceding the month in which the application for extension of credit was received, and (b) the total points and fees paid by the plaintiff exceeded 8% of the total loan amount. *Id*. ¶ 14. The Streeter note contained a provision requiring the plaintiff to make a balloon payment of all sums due on demand, but in any event no later than January 1, 2006. *Id*. ¶ 15.

On or about October 14, 2005, the plaintiff entered into a loan with Ameriquest and used the proceeds to pay all sums due on the Streeter loan. *Id*. ¶ 16. She was unable to make all the payments due on the Ameriquest loan. *Id*. ¶ 17. She received a notice of

intent to foreclose from Ameriquest. *Id*. ¶ 18.  In late 2006 and early 2007, T&M, Holt, and Johnson arranged a loan from defendants Freeway Investments ("Freeway") and Quality Investments, LLC ("Quality") to the plaintiff in the amount of $112,000. *Id*. ¶ 19.  T&M, Holt, Johnson, Freeway, and Quality refused to extend the loan to the plaintiff unless she deeded her home to Freeway and executed a document entitled "Land Installment Contract" with Freeway. *Id*. ¶ 20.  On or about February 7, 2007, the plaintiff deeded her home to Freeway and signed the Land Installment Contract, which required her to pay $112,000 to Freeway with interest at 10% per year and a balloon payment of all sums due on demand, or no later than March 1, 2008. *Id*. ¶ 21.  Quality provided the funds for the loan. *Id*. ¶ 22.  Freeway executed and delivered to Quality a mortgage on the plaintiff's home. *Id*. ¶ 23.  T&M, Holt, Johnson, Freeway, and Quality structured the loan as a sale and repurchase of the plaintiff's home, but the plaintiff, Freeway, and Quality intended that the transaction be, and it in fact was, a loan for personal, family, or household purposes secured by a security interest in the plaintiff's home. *Id*. ¶ 24.

The plaintiff was unsophisticated in financial matters and had little or no knowledge of real estate law or the origination of consumer loans and the extension of consumer credit. *Id*. ¶ 25.  T&M and Holt held themselves out to the plaintiff as having specialized training, skills, knowledge, and expertise in the arrangement, origination, and extension of consumer loans. *Id*. ¶ 26.  The plaintiff was in financial distress before and after obtaining the $112,000 loan. *Id*. ¶ 27.  At the closing of the $112,000 loan, the principal amount of the loan was substantially less than the fair market value of the plaintiff's home. *Id*. ¶ 28.  At the closing, the plaintiff paid closing costs, loan broker fees, points, prepaid finance charges, and prepaid taxes totaling approximately 25% of

4

the loan amount. *Id*. ¶ 32. The $112,000 loan was a high-rate, high-fee mortgage within the meaning of HOEPA and the MCCC because the total fees and points paid by the plaintiff exceeded 8% of the total loan amount. *Id*. ¶ 33.

### III. Discussion

### A. Count I

Count I of the second amended complaint alleges violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et* seq. ("TILA") by Streeter and the Streeter Trust. Complaint ¶¶ 34-42. The complaint seeks rescission of the Streeter loan as well as damages. Complaint at 7.

The defendants contend that the plaintiff acquired the property at issue from the Town of North Berwick, using the Streeter loan to fund the acquisition. Motion at [5]. They attach a deed from the town to the plaintiff to their memorandum as evidence. *Id*. & Exh. A. The defendants contend that there is no right of rescission for a loan used to fund the acquisition of a dwelling, citing 15 U.S.C. § 1635(e) and 9-A M.R.S.A. § 8-204(5)(A). Motion at [5]. In the alternative, they assert that the right of rescission terminated when the mortgaged property was sold, citing 15 U.S.C. § 1635(f) and 9-A M.R.S.A. § 8-204(6). *Id*. Finally, they contend that any demand for rescission that may have been made by the plaintiff was legally inadequate, citing *New Maine Nat'l Bank v. Gendron*, 780 F. Supp. 52, 58-60 (D. Me. 1991). *Id*.

Section 1635(e) of TILA provides, in relevant part: "This section does not apply to – (1) a residential mortgage transaction as defined in section 1602(w) of this title[.]" That definition provides: "The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising

under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).  Section 1635(f) of TILA provides, in relevant part:  "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"

The defendants argue that the Town of North Berwick owned the plaintiff's home at the time the Streeter loan was generated "due to Plaintiff's non-payment of property taxes[,]" citing 36 M.R.S.A. § 943.  Motion at [5].  The second amended complaint alleges that the Town "intended that [the plaintiff] continue to retain title to her home despite any nonpayment of municipal taxes or the recording of tax lien certificates" and that it "waived any automatic foreclosure rights it may have had with respect to tax lien mortgages on [the plaintiff's] home[.]"  Complaint ¶¶ 11-12.  The second amended complaint does not mention what use the plaintiff made of the funds transferred by the Streeter loan transaction.  However, it does allege that the plaintiff executed and delivered a mortgage deed on her home in connection with the Streeter loan.  *Id*. ¶ 9.

The plaintiff does not challenge the authenticity of the additional documents submitted by the defendants, and they appear to be official public records. She contends that the Streeter loan was not a residential mortgage transaction.  Plaintiff's Objection to Defendants' Motion to Dismiss ("Opposition") (Docket No. 12) at 3.  This is so, she asserts, because the complaint alleges that the Streeter loan has been paid in full "and therefore there is no possibility that the Town would be required to return any loan

proceeds or to reinstate its tax liens as defendants claim." *Id*. at 3.  Rescission under these circumstances, she asserts, involves recovery only from the creditor.  *Id*. at 3-4.

While it may be true that some form of rescission may be possible even after a loan has been paid off, *see, e.g., Handy v. Anchor Mortgage Corp*., 464 F.3d 760, 765 (7th Cir. 2006) (citing the Sixth Circuit and acknowledging conflict with the position of the Ninth Circuit), that argument does not address the defendants' point, *supra*, that the Town owned the plaintiff's home pursuant to 36 M.R.S.A. § 943.  On that point, the plaintiff asserts that the tax lien certificates supplied by the defendants "do not establish that the Town owned [the plaintiff's] home" because, *inter alia*, they "do not demonstrate that the Town complied with the statutory requirement that the municipal treasurer notify the named owner not more than 45 days nor less than 30 days before the foreclosure date of the tax lien mortgage[]" and, having failed to demonstrate the Town's strict compliance with the statute, the defendants are not entitled to an inference that a foreclosure occurred.  Opposition at 4.  However, she cites no authority in support of this argument,[3] which appears to me to fly in the face of the applicable statutory language: "If the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired."  36 M.R.S.A. § 943.  The tax lien certificates in this case were filed on August 29, 1997, and state on their faces that the Town complied with the notice requirements on which the plaintiff relies. The complaint alleges that the Streeter loan

---

[3] The case law cited by the plaintiff in connection with this argument, *City of Augusta v. Allen*, 438 A.2d 472, 474-75 (Me. 1981), and *City of Auburn v. Mandarelli*, 320 A.2d 22, 26 (Me. 1974), deals only with the statutory requirements for a valid tax lien certificate.  The plaintiff has not challenged the validity of the tax lien certificates in this case.  *See* Exh. C to Motion.

was closed on or about December 20, 2004, Complaint ¶ 9, much more than 18 months after the filing of the latter tax lien certificate.  Thus, the plaintiff's argument on this point cannot succeed.

The plaintiff next contends that, because she "retained the right to redeem the property" as a result of the Town's alleged "intent" that she retain title to her home "despite nonpayment of municipal taxes," she was not "acquiring" her home when she exercised her right of redemption "any more than property owners in mortgage foreclosure actions 'acquire' their property when redeeming a mortgage after the entry of a foreclosure judgment."  Opposition at 5.  Again, she cites no authority in support of this argument, and again, this argument cannot succeed in the face of the unequivocal statutory language deeming the right of redemption to have expired 18 months after the filing of the tax lien certificate.  The Town's willingness to allow the property owner to reacquire title to the property upon payment of some sort does not mean that the owner who makes that payment is not thereby "acquiring" the property.

The plaintiff's next argument, *id*., is based on the Federal Reserve Board's Official Staff Commentary on Regulation Z, which includes the following statement quoted by the plaintiff:

> A residential mortgage transaction finances the acquisition of a consumer's principal dwelling.  The term does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title.

12 C.F.R. Part 226, Supp. 1, Subpart A, Section 226.2(a)(24)(5)(i).  The plaintiff contends that this comment "makes clear [the plaintiff] could not have financed the acquisition of her home through the Streeter Loan because prior to the closing of this loan

she had acquired title through deeds from her mother's estate and her brother[,]" citing

paragraph 10 of the second amended complaint.   Opposition at 6.   However, the

complaint only alleges that the plaintiff "had acquired sole ownership of her home in

North Berwick through deeds from her mother's estate and her brother."  Complaint ¶ 10.

The complaint does not allege that the plaintiff purchased any ownership interest from

her mother's estate or from her brother.  This distinguishes the commentary on which the

plaintiff relies, because Regulation Z applies by its terms to an interest "purchased *and*

acquired."  (Emphasis added.)  Such a reading is supported by the next section of the

commentary, which the plaintiff did not quote: "Examples of new transactions involving

a previously acquired dwelling include the financing of a balloon payment due under a

land sale contact and an extension of credit made to a joint owner of property to buy out

the other joint owner's interest.  In these instances, disclosures are not required[.]"  The

second amended complaint does not allege that the Streeter loan was a "new transaction"

involving a previously financed acquisition of the same property, and the cited

commentary will not bear the weight that the plaintiff attempts to place upon it.

Because I conclude that the second amended complaint alleges a transaction that

is exempted from TILA by the language of 15 U.S.C. § 1635(e), I do not reach the

defendants' alternate arguments.  Defendants Streeter and the Streeter Trust are entitled

to dismissal of Count I.

## B.   Count II

Count II alleges that defendants Streeter and the Streeter Trust violated HOEPA

and seeks rescission of the Streeter loan as well as damages.  Complaint ¶¶ 43-50 & at 7-

9.   The defendants contend that HOEPA does not apply to residential mortgage

transactions, citing 15 U.S.C. § 1602(aa), and that as a result the defendants were not required to comply with HOEPA when arranging or making the Streeter loan. Motion at [8]. They rely on their arguments made in connection with Count I. *Id.* The plaintiff makes the same representation. Opposition at 7-8.

Section 1602(aa)(1) provides the following relevant definition: "A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan[]" if other conditions are met. For the reasons already discussed, I have concluded that the Streeter loan, as alleged in the second amended complaint can only be a residential mortgage transaction as that term is defined in 15 U.S.C. § 1602(w). Streeter and the Streeter Trust accordingly are entitled to dismissal of Count II for the same reasons that support dismissal of Count I.

## C. Count III

Count III alleges that defendants Streeter and the Streeter Trust violated the disclosure requirements of the MCCC and requests rescission of the Streeter loan as well as damages. Complaint ¶¶ 51-57 & at 10-11. The defendants contend that the Streeter loan was not a "high-rate, high-fee mortgage" under the MCCC and that its disclosure requirements accordingly are not applicable. Motion at [8]. In the alternative, they argue that the right of rescission expired when the plaintiff sold the property in February 2007 and that the plaintiff's demand for rescission is thus not proper. *Id*. at [8]-[9]. This argument was made by the defendants in connection with Count I. The plaintiff again relies on the arguments that she made in connection with Count I. Opposition at 7-8.

The defendants' first argument regarding Count III is distinct from their first argument in connection with the cause of action alleged against the Streeter defendants in Count I. There, the definition of a residential mortgage transaction was at issue. Here, the defendants rely on the definition of a "high-rate, high-fee mortgage," and the plaintiff does not disagree with this description of her claim, even though the second amended complaint suggests that disclosures required by the MCCC other than those relating to "high-rate, high-fee mortgages" might be at issue by use of the word "including." Complaint ¶ 52. A "high-rate, high-fee mortgage" is defined under the MCCC as follows:

> [A] consumer credit transaction, involving real property located within this State, that is considered a "mortgage" under Section 152 of the federal Home Ownership and Equity Protection Act of 1994, 15 United States Code, Section 1602(aa) and subject to the regulations adopted pursuant thereto by the Federal Reserve Board, including 12 Code of Federal Regulations, Section 226.32 and the official staff commentary to the regulations as each may be amended from time to time.

9-A M.R.S.A. § 8-103(F-1). The cited regulation provides, in relevant part:

> (1) [T]he requirements of this section apply to a consumer credit transaction that is secured by the consumer's principal dwelling, and in which either:
>
> (i) The annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (ii) The total points and fees payable by the consumer at or before loan closing will exceed the greater of 8 percent of the total loan amount, or $400; the $400 figure shall be adjusted annually on January 1 by the annual percentage change in the Consumer Price Index that was reported on the preceding June 1.

(2)  This section does not apply to the following:

    (i)  A residential mortgage transaction.

12 C.F.R. § 226.32(a)(1)-(2).  The plaintiff is careful to allege the elements of this definition with respect to the Streeter loan in her second amended complaint, Complaint ¶ 14, but as seen above with Count I, the definition specifically exempts a residential mortgage transaction.

The MCCC defines "a residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of that dwelling," 9-A M.R.S.A. § 8-103(H).[4]  For the reasons already discussed in connection with the federal claim in Count I, I have concluded that the Streeter loan was a residential mortgage transaction.  Accordingly, the Streeter loan did not come within the definition of a "high-rate, high-fee mortgage" under the MCCC.  Count III, limited to claims based on such a status, as the parties appear to agree it is, fails to state a claim on which relief may be granted.  Streeter and the Streeter Trust are entitled to dismissal of Count III.

### D.  Count IV

Count IV of the second amended complaint alleges that Streeter, the Streeter Trust, T&M, and Holt engaged in unfair or deceptive acts or practices in connection with the Streeter loan, in violation of the Maine Unfair Trade Practices Act ("UTPA"), 5 M.R.S.A. § 205-A, *et seq.*  Complaint ¶¶ 58-60.  The defendants contend that the UTPA does not apply to highly regulated industries such as the mortgage lending industry.

---

[4] A 2007 amendment of this definition does not apply to this case, where the events at issue all took place before the amendment took effect.

Motion at [9].  The plaintiff responds that this misreads the applicable statutory language.

Opposition at 8-12.

The relevant language from the UTPA is the following:

Nothing in this chapter shall apply to:

1. **Regulatory boards**.  Transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the State or of the United States[.]

5 M.R.S.A. § 208 (2002).[5]   Given this language, the defendants assert, applying the UTPA to "the mortgage lending and brokerage industries would create . . . an illogical result."  Motion at [10].

The plaintiff responds that nothing in section 208(1) exempts entire industries from the UTPA, that loan brokers are in any event not governed by a comprehensive regulatory scheme, and that only actions that are specifically permitted by statute or regulation are exempted.  Opposition at 8-10.  The defendants do not identify any of their actions, which the plaintiff has alleged violated the UTPA, as being specifically permitted by any statute or regulation.  This omission is determinative.

In *Good v. Altria Group, Inc.*, 501 F.3d 29 (1st Cir. 2007), the First Circuit examined the version of section 208 that applies here, in the context of an action alleging unfair or deceptive trade practices against a cigarette manufacturer.  *Id.* at 31, 55-58.  The

---

[5] The plaintiff contends that the version of this statute that became effective three months before she filed this action is applicable here "because it does not make substantive changes to § 208(1) but merely sets up a procedure for applying the statutory exception."  Opposition at 9.  The test for retroactivity is well-established in the law.  The amendment adds the following to the language quoted above: "This exception applies only if the defendant shows that: A. Its business activities are subject to regulation by a state or federal agency; and B. The specific activity that would otherwise constitute a violation of this chapter is authorized, permitted or required by a state or federal agency or by applicable law, rule or regulation or other regulatory approval."  5 M.R.S.A. § 208 (1) (Supp. 2007).  This change is clearly substantive rather than procedural and therefore does not apply to events that took place in 2004.  *Greenvall v. Maine Mut. Fire Ins. Co.*, 2001 ME 180, ¶7, 788 A.2d 165, 166-67.

First Circuit read *First of Maine Commodities v. Dube*, 534 A.2d 1298 (Me. 1987), cited by both parties in the instant case, Motion at [9], Opposition at 10, "for the proposition that conduct is exempt from the [Maine] Unfair Trade Practices Act where it is subject to specific standards left to the enforcement of an administrative agency, not merely those circumstances in which the agency's regulatory scheme is generally 'extensive' or 'detailed.'" 501 F.3d at 58. Like the plaintiffs in *Good*, the plaintiff here "do[es] not seek to hold [the defendants] liable under the Unfair Trade Practices Act for complying with [specific regulatory] standards." *Id*. While, as the defendants note, Motion at [9], this court may have interpreted *Dube* in the past to allow the application of section 208(1) to entire industries or professions, *see, e.g., Keatinge v. Biddle*, 2000 WL 761015 (D. Me. Mar. 20, 2000), at *1; *Wyman v. Prime Discount Sec.*, 819 F. Supp. 79, 86-87 (D. Me. 1993), *Good* has interpreted the Maine statute otherwise and governs this court's consideration of the question at this time.[6]

The defendants are not entitled to dismissal of Count IV on the showing made.

### E.  Counts V-VIII

Count V of the second amended complaint alleges violation of TILA by defendants Freeway and Quality. Complaint ¶¶ 61-69. Count VI alleges violation of HOEPA by Freeway and Quality. *Id*. ¶¶ 70-77. Count VII alleges violation of the

---

[6] The defendants point out that "the United States Supreme Court recently granted certiorari in this case [128 S.Ct. 1119], indicating reliance on this holding may be premature. Contrary to the pending review, the plaintiff would have this court follow a questionable decision in contravention of the many Maine Supreme Court and Federal District Court cases cited in Defendants' Memorandum in Support of Motion to Dismiss." Defendants' Reply in Further Support of Their Motion to Dismiss ("Reply") (Docket No. 17) at 3. The defendants understandably cite no authority in support of their necessarily-implied proposition that this court may act contrary to a decision of the First Circuit so long as that decision happens to be under appeal to the United States Supreme Court. That proposition is simply wrong. *See, e.g., Schwab v. Secretary, Dep't of Corrections*, 507 F.3d 1297, 1298-99 (11th Cir. 2007); *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995); *see also United States v. Booker*, __ F.Supp.2d __, 2008 WL 2211937 (D. Me. May 27, 2007), at *2.

MCCC by Freeway and Quality.  *Id*. ¶¶ 78-84.  Count VIII alleges violation of "MCCC Licensing Requirements" by Freeway and Quality.  *Id*. ¶¶ 85-87.  All of these counts refer to the 2007 transaction.  The defendants contend that the 2007 transaction was between Freeway and Quality and thus not subject to these statutes and that the plaintiff lacks standing to challenge the 2007 transaction under these statutes.  Motion at [11]-[12].

The plaintiff responds that she has defined the phrase "Freeway/Quality Loan" in the second amended complaint as meaning "the $112,000 consumer loan *from* Freeway and Quality *to* [the plaintiff]" made in 2007 (emphasis in original) and as such, the loan was for personal, family, or household purposes, making it subject to the statutory schemes at issue.  Opposition at 12-13.  Of course, a party's mere defining of the 2007 transaction as a consumer loan does not make it a consumer loan.  *See In re Sonus Networks, Inc. Shareholder Derivative Litig*., 499 F.3d 47, 66 (1st Cir. 2007) (in considering motion to dismiss, court gives no effect to conclusory allegations); *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 n.3 (1st Cir. 2006) (on motion to dismiss, court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim).  The second amended complaint includes the following relevant allegations:

> 19.  In late 2006 and early 2007, T&M, Holt and Johnson arranged a loan ("the Freeway/Quality Loan") from Freeway and Quality to Provencher in the amount of $112,000.

> 20.  T&M, Holt, John, Freeway and Quality refused to extend the Freeway/Quality Loan unless Provencher deeded her home to Freeway and executed a document titled "Land Installment Contract" with Freeway.

21.   On or about February 7, 2007, Provencher deeded her home to Freeway and signed the "Land Installment Contract," which document required her, *inter alia*, to pay $112,000 to Freeway with interest at 10% per year and a balloon payment of all sums due on demand or no later than March 1, 2008.

22.   Quality provided the loan proceeds for the Freeway/Quality Loan.

23.   Freeway executed and delivered to Quality a mortgage on Provencher's home, which mortgage is recorded in the York County Registry of Deeds in Book 15083, Page 381.

24.   T&M, Holt, Johnson, Freeway and Quality structured the Freeway/Quality loan as a sale and repurchase of Provencher's home, but Provencher, Freeway and Quality intended that this transaction be, and it in fact was, a loan for personal, family or household purposes secured by a security interest in Provencher's home.

Complaint at 4-5.  Based on these allegations, while the 2007 transaction is alleged to be a loan from Freeway and Quality to the plaintiff, only Freeway executed and delivered a mortgage to Quality and the plaintiff deeded the property to Freeway.  These allegations are not consistent with characterizing the transaction as a loan from Quality to the plaintiff for any purpose.  Nor do the allegations establish that Quality obtained any security from the plaintiff in this transaction, as would normally be true when a loan is "secured by a security interest in" an alleged borrower's home.

None of the parties has provided the court with a copy of the 2007 transaction documents.  The Land Installment Contract, a copy of which is attached as Exhibit E to the motion to dismiss, is, by its terms, clearly an agreement only between Freeway and the plaintiff.  It does refer to a mortgage interest in the property conveyed by Freeway to Quality, Land Installment Contract (Exh. E to Motion) ¶ 25, but that paragraph is inconsistent with the plaintiff's allegation that the loan from Quality to Freeway reflected

16

in that paragraph was intended by all parties to be a loan to the plaintiff.  The plaintiff's conclusory allegation cannot overcome the unambiguous language of the written installment sales contract, which is sufficiently referred to in the second amended complaint to allow the court to consider it in connection with the motion to dismiss.

The plaintiff does not dispute the defendants' assertion that TILA, HOEPA, and the MCCC all do not apply to extensions of credit primarily for business or commercial purposes.  Motion at [12]; *see also* 15 U.S.C. § 1603(1); 9-A M.R.S.A. § 1-202(1). Because the plaintiff fails to allege facts sufficient to take the 2007 transaction out of the category of a business or commercial loan between Quality and Freeway, a transaction to which she was not a party, Freeway and Quality are entitled to dismissal of Counts V-VIII.

### F.   Count IX

Count IX of the second amended complaint seeks a declaratory judgment to the effect that the 2007 transaction established an equitable mortgage, that the mortgage from Freeway to Quality is void, and that the land installment contract is void.  Complaint ¶¶ 88-91.  This count is asserted against Freeway and Quality.  The defendants contend that this count must be dismissed because the plaintiff "has failed to allege any 'clear and convincing' evidence required to support such an equitable remedy."  Motion at [12]. They assert that the plaintiff failed to allege that she believed the conveyance of the deed to her property to be merely security for a loan, a necessary element of her claim, and that the fact that she entered into the land installment contract disproves any assertion that the deed was so intended.  *Id*. at [12]-[13].

17

The plaintiff responds, correctly, that she has alleged in the second amended complaint that she believed that the deed and installment sales contract were intended as security for a loan.  Opposition at 14; Complaint ¶¶ 24, 89, 91.  She next argues that the fact that the installment sales agreement is a document separate from the deed does not, as a matter of law, render it impossible that an equitable mortgage was created. Opposition at 15.  The defendants do not cite any authority in support of their argument on this point.

> [I]n equity, where the proof is clear and convincing, a deed absolute on its face may be construed to be an equitable mortgage. . . . The criterion is the intention of the parties.  In equity this intention may be ascertained from all pertinent facts, either within or without the written parts of the transaction. Where the intention is clear that an absolute conveyance is taken as a security for a debt, it is in equity a mortgage.  The real intention governs.

*Knapp v. Bailey*, 79 Me. 195, __, 9 A. 122, 123 (1887) (citation and internal punctuation omitted); *accord, Seaman v. Seaman*, 477 A.2d 734, 736 (Me. 1984).  Nothing in *Knapp*, nor in any of the other opinions cited by the defendants, Motion at [12], Reply at 4-5, supports their contention that the presence of a document in addition to a deed in the transaction in question makes it impossible as a matter of law for an equitable mortgage to exist.  The defendants' suggestion, Motion at [13], that a claim based on an equitable mortgage must be pled "to present clear and convincing evidence," similarly unaccompanied by citation to authority, must also be rejected.  The standard of clear and convincing evidence applies to a party's burden of proof; it does not describe the substance or manner of pleading a particular claim. *See, e.g., Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989) (judgment on pleadings).

Finally, the defendants cite *Massachusetts Bay Ins. Co. v. Bushmaster Firearms, Inc.*, 324 F.Supp.2d 110, 112 (D. Me. 2004), for the proposition that "[r]egardless of the form of agreement, parol evidence may not be used to counter the terms of an unambiguous contract."  Reply at 5.  That general rule, expressed in *Bushmaster* with respect to an insurance contract, is not applicable in this case, where Maine case law explicitly establishes an exception for claims alleging that an equitable mortgage exists.

The defendants are not entitled to dismissal of Count IX.

### G.  Counts X and XII

Count X of the second amended complaint alleges intentional misrepresentation in connection with the 2007 transaction by defendants Freeway, Quality, T&M, Holt, and Johnson.  Complaint ¶¶ 92-100.  Count XII alleges negligent misrepresentation against the same defendants arising out of the same loan.  *Id.* ¶¶ 103-05.  The defendants contend that the allegations in these counts do not establish the elements of these claims.  Motion at [13]-[15].  The plaintiff responds that her misrepresentation claims are not based on expressions of opinion by the named defendants and that she could justifiably rely on the alleged misrepresentations.  Opposition at 16-19.

Under Maine law, the tort of intentional misrepresentation, also known as fraudulent misrepresentation, requires proof by clear and convincing evidence that a defendant (1) made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing plaintiff to act in reliance upon it, and (5) the plaintiff justifiably relied upon the representation as true and acted upon it to her damage.  *Vescom Corp. v. American Heartland Health Adm'rs, Inc.,* 251 F.Supp.2d 950, 964-65 (D. Me. 2003).  The tort of

19

negligent misrepresentation imposes liability on a defendant who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, provided that he fails to exercise reasonable care or competency in obtaining or communicating the information and the others are justified in relying on the information. *Id.*

The defendants do not differentiate between the claims in making their arguments. They assert that the plaintiff has failed to plead facts that establish that any representations they may have made were false and that she justifiably relied upon any such representations. Motion at [14]. They characterize the statements alleged in the complaint and the bases for these claims as statements of opinion, puffing, or dealer's talk, citing Maine case law. *Id.* at [14]-[15]. They go on to contend that at least one of these statements (Complaint ¶ 83(b)) was obviously false, so that any reliance by the plaintiff could not have been justifiable. *Id.*

The parties agree that five alleged statements are at issue with respect to each count and on the alleged substance of those statements. *Id.* at [14]-[15]; Opposition at 16-18. I will accordingly address each individually.

The first alleged misrepresentation is "that T&M, Holt and Johnson could not arrange a loan for Provencher to pay off the Ameriquest Loan[.]" Complaint ¶ 93(a). The defendants assert that this was merely a statement of opinion, because "[i]t is impossible for Plaintiff to prove that Defendants *could* arrange a loan to pay off the Ameriquest Loan[.]" Motion at [14] (emphasis in original). I do not see how it is necessarily the case that the plaintiff cannot prove that the statement at issue is false. The

defendants do not attempt in their motion to describe how any reliance by the plaintiff on this statement was not justifiable.[7]  The defendants are not entitled to dismissal of Counts X and XII to the extent that they are based on this statement.

The second statement alleged is that the plaintiff had no choice but to sell her home to Freeway to avoid losing it through foreclosure.  Complaint ¶ 93(b).  The defendants contend that "[i]t is obvious that Plaintiff had other options, including selling the Property or seeking a loan from another party."  Motion at [15].  Thus, they assert, the plaintiff could not have justifiably relied on the statement.[8]  The plaintiff responds that these alternatives were not "obvious" to her, Opposition at 17, and that she has alleged that she was financially unsophisticated and had little or no knowledge of real estate, consumer loans and consumer credit.  Complaint ¶ 25.  While this treatment of the second statement makes it a close question, I conclude that the plaintiff has alleged sufficient facts to allow a reasonable factfinder to conclude that she justifiably relied on the statement at issue.  The defendants are not entitled to dismissal of Counts X and XII based on this statement.

The third alleged statement is that the 2007 transaction "was not a loan transaction but instead a sale of Provencher's home to Freeway and repurchase of the home by Provencher."  Complaint ¶ 93(c).  The defendants argue that the plaintiff may not rely on this statement as a false representation when she also alleges that it is true in paragraphs 17 and 83(c) of the first amended complaint (paragraphs 21 and 93(c) of the

---

[7] In their reply memorandum, the defendants address for the first time the element of the plaintiff's justifiable reliance on this statement.  Reply at 6.  This discussion comes too late.  *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 19 n.5 (D. Me. 1991) (court will not address an argument raised for the first time in a reply memorandum).

[8] Again, the defendants add different substantive arguments as to this statement in their reply memorandum.  Reply at 6.  For the reasons already stated, I will not consider those arguments.

second amended complaint).  Motion at [15].  In their reply memorandum, they assert: "Paragraph 17 of the Complaint states that Provencher deeded her home to Freeway and signed the land installment contract.  How could that allegation be true, and the allegation [at issue] be false?"  Reply at 6.   I am not persuaded that paragraph 21 of the second amended complaint contradicts the plaintiff's allegation that the true nature of the transaction was a loan and not a sale, but even if it did, the defendants' argument ignores the principle of pleading in the alternative.  Fed. R. Civ. P. 8(e)(3); *GMAC Commercial Mortgage Corp. v. Gleichman*, 84 F.Supp.2d 127, 136-37 (D. Me. 1999).  The defendants are not entitled to dismissal of Counts X and XII on the basis of this argument.

The fourth alleged statement is that "by escrowing seven months of interest payments, Provencher would improve her credit rating and be able to pay off the balloon payment due on the Freeway/Quality Loan by refinancing[.]"  Complaint ¶ 93(d).  The defendants contend that it is "mere opinion of a future event[]" and "[a]t most . . . could be considered dealer's talk[.]"  As the plaintiff points out, Opposition at 16, the Maine Law Court in 1990 held that misrepresentations of opinion may be actionable, when factors such as the relationship of the parties, the opportunity to investigate and reasonable reliance are considered.  *Boivin v. Jones & Vining, Inc.*, 578 A.2d 187, 188-89 (Me. 1990).   Those factors are sufficiently put into play by the second amended complaint.  The defendants are not entitled to dismissal of Counts X and XII on this basis.

The fifth and final alleged misrepresentation is that "Holt wanted to buy Provencher's home."  Complaint ¶ 93(e).  The defendants contend that this statement "is

a mere opinion of Holt's desires and cannot be proved to be false." Motion at [15].[9]  If the statement was made by Holt, one of the defendants against whom Counts X and XII are asserted, it is decidedly not a mere statement of opinion.  Nor is it necessarily a statement of opinion if it was made by one of the other defendants named in these counts. Maine law recognizes claims of misrepresentation based on false statements of a person's present intention under certain circumstances.  *Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 840 (Me. 1978); *see also* Restatement of Torts (Second) §§ 525, 530(1).  The defendants take nothing by this argument.  The defendants are not entitled to dismissal of Counts X and XII.

### H.  Count XI

Count XI of the second amended complaint alleges misrepresentation by defendants Freeway, Quality, T&M, Holt, and Johnson under the MCCC with respect to the 2007 transaction.  Complaint ¶¶ 101-02.  It invokes 9-A M.R.S.A. § 9-401, which provides, in relevant part: "A creditor . . . may not induce a consumer to enter into a consumer credit transaction by misrepresentation of a material fact with respect to the terms and conditions of the extension of credit."  The defendants contend that the 2007 transaction was not a consumer credit transaction because it took place between Freeway and Quality, a commercial loan to which the MCCC does not apply.  Motion at [16].  I agree with the defendants that the plaintiff was not a party to the loan as it is described, as distinct from the way in which it is characterized in conclusory fashion, in the second amended complaint.  For the reasons already discussed above, *see* Section E *supra,* and

---

[9] Again, the defendants argue for the first time in their reply memorandum that the plaintiff cannot prove that she justifiably relied on this representation.  For the reasons already stated, that argument comes too late.

for this reason as well, I conclude that the defendants are entitled to dismissal of Count XI.

### I. Count XIII

Count XIII of the second amended complaint alleges that Freeway, Quality, T&M, Holt, and Johnson violated the Maine Unfair Trade Practices Act in connection with the 2007 transaction in certain specific ways.  Complaint ¶¶ 106-08.  The defendants contend that none of the acts alleged in this count "meet[s] the legal definition of deceptive or unfair" and thus they cannot provide a basis for liability under the Act.  Motion at [16]-[18].  The plaintiff responds that each of the alleged acts meets the requirements of the statute.  Opposition at 20-23.  I will consider each allegedly deceptive or unfair act in the sequence set forth in the second amended complaint.

The first specific violation alleged is "extending and/or arranging the Freeway/Quality Loan without regard to Provencher's ability to repay the loan and/or despite the fact that she was unable to repay the loan in accordance with its terms[.]"  Complaint ¶ 107(a).  The defendants assert that this allegation cannot form the basis of a cognizable claim under the UTPA "because there was no such loan and no such requirement."  Motion at [17].  They include by reference their argument with respect to Count IX.  *Id.*  I do not see how the discussion of Count IX, which alleges the existence of an equitable mortgage, is relevant to a discussion of Count XIII.  I have already concluded, in connection with my discussion of Counts V-VIII, that the second amended complaint does not allege the existence of a loan to the plaintiff in connection with the 2007 transaction.  The only authority cited by the plaintiff in opposition to the defendants' motion with respect to this specific allegation, *Opportunity Mgmt. Co., Inc. v.*

*Frost*, 1999 WL 96001 (Wash. App. Feb. 16, 1999), an unpublished opinion of an intermediate Washington state court, involved a transaction that was clearly a loan extended to the defendant by the plaintiff's predecessor-in-interest, *id*. at *1, and thus would not provide persuasive authority for this case, even if the state statutes involved had been sufficiently similar, a question which I need not decide. As drafted, therefore, the second amended complaint fails to state a claim under the UTPA with respect to the first specific allegation of paragraph 107.

The second specific allegation in Count XIII is that the named defendants violated the UTPA by "disguising the Freeway/Quality Loan as a sale of Provencher's home[.]" Complaint ¶ 107(b). Here, the defendants rely only on their previous argument that this claim is contradicted by paragraph 21 of the second amended complaint. Motion at [17]. I have already rejected that argument for the reasons stated earlier in this recommended decision. *See* Section G, *supra*. On the showing made, the defendants are not entitled to dismissal of that portion of Count XIII that is based on paragraph 107(b) of the second amended complaint.

The third specific allegation in Count XIII is that the named defendants violated the UTPA by "making the false representations described in paragraph 93 above[.]" Complaint ¶ 107(c). The defendants rely on their arguments respecting that paragraph in connection with Counts X and XII. Motion at [17]. I have rejected those arguments. *See* Section G. Thus, the defendants are not entitled to dismissal of that portion of Count XIII that is based on paragraph 107(c) of the second amended complaint.

The fourth specific allegation in Count XIII is that the named defendants violated the UTPA by "not providing Provencher with accurate, complete and truthful information

and disclosures regarding the Freeway/Quality Loan or the fact that Freeway and Quality were not licensed supervised lenders in the State of Maine[.]"  Complaint ¶ 107(d).  The defendants contend that they were under no obligation to provide specific information or disclosures to the plaintiff nor were they required to be licensed as supervised lenders "as discussed in" those portions of their motion addressing Counts V-IX and XVII-XVIII.  Motion at [17]-[18].  I concluded that the defendants were entitled to dismissal of Counts V-VIII but not Count IX.  Again, I do not see how Count IX, which seeks a declaratory judgment that an equitable mortgage existed, is relevant to Count XIII, which alleges violations of the Maine UTPA.  The plaintiff incorporates by reference her arguments with respect to the earlier and later counts, Opposition at 22, and my recommendation on Counts V-VIII, that Freeway and Quality are entitled to dismissal as to those counts, accordingly applies here as well.  I conclude *infra* that defendants T&M and Holt, who are not named in Counts V-VIII, are entitled to dismissal of Counts XVII and XVIII, and similarly apply those conclusions here.  The defendants are entitled to dismissal of that portion of Count XIII that is based on paragraph 107(d) of the second amended complaint.[10]

The fifth specific allegation in Count XIII is that the named defendants violated the UTPA by "deceptively and/or unfairly charging Provencher excessive fees and closing costs, including not accurately or timely disclosing these fees and costs[.]"  Complaint ¶ 107(e).  The defendants assert that the plaintiff "provides no basis in law or

---

[10] The plaintiff contends that Count XIII "states a viable claim" against Freeway and Quality "for violations of the licensing requirements of the MCCC[.]"  Opposition at 22.  This conclusion requires a very expansive reading of paragraph 107(d) of the second amended complaint.  Even if that paragraph could be read so broadly, however, the plaintiff does not cite any authority for the proposition that the MCCC requires Freeway and Quality to be licensed, let alone that a private cause of action exists for failure to comply with any such requirement.  The plaintiff's unsupported conclusory argument on this point is not sufficient to save any portion of the fourth specific allegation under Count XIII.

fact" for this claim.  Motion at [18].  They contend that "[t]o the extent that Plaintiff claims the 'excessive fees and closing costs' amount to unfair pricing, such claim is also barred because a higher price would not induce a consumer to purchase a service."  *Id*. They cite *Tungate v. MacLean-Stevens Studios, Inc.*, 1998 ME 162, ¶ 11, 714 A.2d 792, 797, in support of the latter contention.  *Id*.  The plaintiff does allege a basis in fact for this claim.  Complaint ¶¶ 20, 25, 27-28, 32.  The defendants do not explain why the plaintiff should be required to "provide a basis in law" for this claim beyond the allegation made by the plaintiff here that charging excessive fees violated the UTPA, and none is readily apparent.  The second amended complaint also alleges that the plaintiff was unsophisticated in financial matters and that the allegedly excessive fees were not timely or accurately disclosed.  These allegations distinguish this case from *Tungate*, where the plaintiff knew the fee in advance and the issue was an undisclosed commission that was included in the total price otherwise disclosed to and paid by the plaintiff.  714 A.2d at 797.  The defendants are not entitled to dismissal of that portion of Count XIII that is based on paragraph 107(e) of the second amended complaint.

The sixth and final specific allegation in Count XIII is that the named defendants violated the UTPA by "violating state and federal laws relating to the Freeway/Quality Loan."  Complaint ¶ 107(f).  The defendants assert that the plaintiff "provides no basis in law or fact for the claim that . . . Defendants violated laws in connection with [the] February 2007 Transaction."  Motion at [18].  They contend that "TILA and Maine TILA do not apply to the February 2007 Transaction."  *Id*.  In response, the plaintiff argues that the 2007 transaction "is subject to TILA, HOEPA and the MCCC."  Opposition at 22.  I have previously concluded that, with respect to the 2007 transaction, the defendants are

entitled to dismissal of Counts V-VIII and XI, the only counts that allege violation of any of those statutes.  The plaintiff also argues, however, that the named defendants violated the Maine UTPA with respect to the 2007 transaction, Opposition at 22, and I have concluded that some portions of her claims based on that statute, as set forth in Count XIII, remain viable.  Accordingly, that portion of paragraph 107(f) of Count XIII that is based on alleged violations of the UTPA is not subject to dismissal.

## J.  Count XIV

Count XIV of the second amended complaint, asserted against defendants Freeway and Quality, alleges that the documents integral to the 2007 transaction were unconscionable, and that the transaction was induced by unconscionable conduct by these defendants.  Complaint ¶¶ 109-12.  The title of the count invokes the MCCC and common law, although neither is mentioned in the body of the count.  The defendants contend that the plaintiff cannot challenge the loan between Freeway and Quality as she was not a party to that loan; they also argue that the second amended complaint fails to allege adequate facts to establish unconscionability related to the sale of the property and the land installment contract.  Motion at [18]-[19].  Specifically, they argue that the allegation that there was "a large disparity in bargaining power" between the plaintiff and Freeway and Quality, Complaint ¶ 110, is merely an allegation of a legal conclusion "without asserting specific facts that would prove this disparity exists."  *Id.*

The plaintiff responds, again, that her definition of the 2007 transaction as a consumer loan gives her standing to challenge the transaction between Freeway and Quality; that she disagrees that paragraph 110 of the second amended complaint states only a legal conclusion; and that, in any event, the second amended complaint does allege

facts that support that allegation.  Opposition at 23.  For the reasons already discussed, I agree with the defendants that the plaintiff lacks standing, based on the allegations in the second amended complaint, to attack the loan from Quality to Freeway.  On the second and third points above, however, I agree with the plaintiff.  Assuming *arguendo* that paragraph 110 states only a legal conclusion, paragraphs 2-3, 16-18, 20 and 25-27 state sufficient facts to allow a reasonable person to conclude that the plaintiff depended upon one or more of the defendants at the time of the 2007 transaction, and that there was a large disparity between their bargaining positions with regard to the transaction.  The presence of "vastly unequal bargaining positions" is not a necessary element of a claim of unconscionability in *Gorham Sav. Bank v. MacDonald,* 1998 ME. 97, ¶ 16, 710 A.2d 916, 920-21, as the defendants suggest, Motion at [18]-[19], but rather a description of the point at which a "take it or leave it" contract becomes unconscionable.  The presence of "vastly unequal bargaining positions" is listed parenthetically in *MacDonald* along with several Maine cases dealing with the concept of unconscionability.  In addition, the case cited for the principle in *MacDonald* actually only uses the "vastly unequal bargaining position" term in *dicta*, noting also that a contract of adhesion may be unconscionable due to overreaching by a party.  *Dairy Farm Leasing Co. v. Hartley*, 395 A.2d 1135, 1139 n.3 (Me. 1978).  The motion to dismiss Count XIV should be denied.

### K.  Count XV

Count XV of the second amended complaint alleges that defendants T&M and Holt breached an oral contract with the plaintiff.  Complaint ¶¶ 113-16.  The defendants contend that this count must be dismissed because the plaintiff has failed to allege that she gave any consideration for the alleged promises; when, how, or under what

conditions the defendants were required to perform the promises; or specifically how the defendants breached their contractual obligations.  Motion at [20].  Finally, they contend that the integration clause in the land installment contract bars this claim, and that the land installment contract, combined with the delivery of the deed to her property, "serve[s] as an integration of all the prior promises and agreements between the parties." *Id.* at [20]-[21].  The plaintiff responds that she has alleged the necessary consideration and the way in which the defendants breached the contract; she is not required to allege when, how, or under what conditions the defendants were required to perform; and the defendants named in this count were not parties to the land installment contract, so their promises could not be merged into that document.  Opposition at 23-24.

The plaintiff's first response is correct.  Paragraph 114 of the second amended complaint alleges that the plaintiff provided consideration, specifically, a promise to pay all fees charged by T&M and Holt.  The defendants assert, without citation to authority, that "the broker fees" were given in exchange for the 2007 Transactions and not any other promises."  Reply at 9.  The defendants are mistaken.  First, paragraph 114 does not specify that all of the plaintiff's payment or payments to T&M and Holt were "broker fees."   Second, and more importantly, the defendants cite no support for their factual assertion, much less any support in the second amended complaint or in any document incorporated or sufficiently referenced therein.

I also agree with the plaintiff's second contention.  The defendants cite no authority to support their assertion that a plaintiff alleging breach of contract is required to plead when, how, and under what conditions the defendant was required to perform the promises at issue, or specifically how the defendant breached each such promise, and I

am not aware of any such statute or case law.  Indeed, such a characterization of pleading requirements for a claim of breach of contract is at odds with the principles of notice pleading, which is the standard both in Maine and in the federal courts.

The defendants dismiss the plaintiff's contention that they may not rely on the integration clause of a contract to which they are not parties by asserting that the plaintiff "seeks to hold those Defendants liable under that same contract" in Count XV.  Reply at 9.  There is nothing in Count XV of the second amended complaint that may reasonably be read to seek to hold T&M or Holt liable under the installment sales contract.  Section 14 of that document, on which T&M and Holt rely, Motion at [20] n.5, provides, in its entirety:

> 14.  <u>Entire Agreement</u>.  Both Buyer and Seller agree that this Land Installment Contract, together with the deeds referenced in Section 3, hereinabove, constitute the sole and only agreement between them respecting the Premises and correctly sets forth their obligations to each other as of its date.  This Land Installment Contract and associated documents shall not be modified other than in writing signed by all parties hereto.

Land Installment Contract (Exhibit E to Motion) ¶ 14.  The document defines "Buyer" as the plaintiff and "Seller" as Freeway.  *Id*. at [1].  There is no sense in which this paragraph may reasonably be interpreted to merge any promises made by anyone other than the Buyer and the Seller into the Land Installment Contract.

The defendants' final argument, that any oral agreements made by T&M or Holt with the plaintiff are merged into the land installment contract by delivery of the deed, Motion at [21], also founders on the fact that neither T&M nor Holt is a party to the deed or to the land installment contract.  The only authority the defendants cite in support of their position, *Bryan v. Breyer*, 665 A.2d 1020, 1022 (Me. 1995), does not support it.  As

the Law Court stated in that case: "The doctrine of merger by deed provides that once a

. . . deed is accepted it becomes the final statement of the agreement between the parties

and nullifies all provisions of the purchase-and-sale agreement." *Id.* (citation and internal

punctuation omitted).  It is clear that the parties to whom the Law Court referred are the

parties to the deed and not third parties who may have had an agreement with one of the

two parties to the deed, even if that agreement may have been related to the transaction

memorialized in the deed.

The defendants are not entitled to dismissal of Count XV.

## L.  Count XVI

Count XVI of the second amended complaint alleges that defendant T&M and

Holt breached their duty of reasonable care to the plaintiff, causing her damage.

Complaint ¶¶ 117-19.  The defendants contend that this count must be dismissed because

the plaintiff "has failed to allege any facts that establish a duty of care owed by

Defendants to Plaintiff or facts showing that Defendants breached a duty of care owed to

Plaintiff."  Motion at [21].  They assert that "[a]ll agreements between Plaintiff and

Defendants have been negotiated at arms [sic] length and contracting parties do not owe

any general duty of care to each other."  *Id.*  The first half of this last assertion is one of

fact, is not consistent with the allegations in paragraphs 25-27 of the second amended

complaint, and is a point more appropriate for consideration in connection with a motion

for summary judgment, rather than a motion to dismiss.

The plaintiff responds that "Maine case law establish[es] that professionals owe a

duty to perform their services by applying proper skill, knowledge and expertise to the

matters at hand."  Opposition at 25.  The second amended complaint alleges that T&M

and Holt were licensed professionals, performed services for the plaintiff typical of those professions, and held themselves out as professionals.  Complaint ¶¶ 2, 7-8, 26.  Maine law does provide that professionals have a duty of care to those for whom they perform services within their profession.  *Rowe v. Bennett*, 514 A.2d 802, 804 (Me. 1986). *See also Seven Tree Manor, Inc. v. Kallberg*, 1997 ME 10, 688 A.2d 916 (professional engineer); *Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57 (Me. 1982) (architect). In addition, for reasons discussed earlier, a plaintiff may plead in the alternative a contract and a tort claim arising out of the same facts.  The allegations of the second amended complaint are sufficient to state a negligence claim against T&M and Holt.

## M.  Count XVII

Count XVII of the second amended complaint alleges that defendant T&M violated two sections of the MCCC.  Complaint ¶¶ 120-23.  It does not specify whether these alleged violations occurred in connection with the 2004 loan, the 2007 transaction, or both.  T&M contends that this count must be dismissed because the plaintiff alleges that Holt was acting on behalf of Freeway in connection with the 2007 transaction, so that he was not providing broker services, and the only extension of credit that was part of that transaction was a commercial loan that was not subject to the MCCC.  Motion at [22].

The sections of the MCCC invoked in the title of Count XVII, 9-A M.R.S.A. §§ 10-302 and 10-303, Complaint at 22, require a written agreement between a consumer and a loan broker and that a loan broker provide a written disclosure "[b]efore any agreement is entered into, or before any money is paid by a consumer[.]"  9-A M.R.S.A. § 10-303 (Supp. 2007).  The plaintiff appears to agree that this count refers only to the

2007 transaction,[11] Opposition at 26, and argues that the transaction was a consumer loan, a contention that I have rejected in my analysis of Counts VII and VIII, where I concluded that plaintiff has not pled sufficient facts to take the 2007 transaction out of the category of business or commercial loans, which are not subject to the MCCC.  That conclusion is applicable to this count as well.

The sections of the MCCC on which the plaintiff relies in this count impose requirements on a "loan broker."  That term is defined as "any person who, with respect to the extension of consumer credit by others, provides or offers to provide, in return for the separate payment of money or other valuable consideration[]" any of a list of services.  9-A M.R.S.A. § 10-102(1) (Supp. 2007).   Because I have concluded that the second amended complaint does not allege sufficient facts to establish that the 2007 transaction involved the extension of consumer credit, T&M cannot properly be characterized as a loan broker for the purpose of the cited statutory provisions.  T&M is accordingly entitled to dismissal of Count XVII.

## N.  Count XVIII

Count XVIII, the last count of the second amended complaint, alleges that defendants T&M and Holt violated 9-A M.R.S.A. § 10-401.   Complaint ¶¶ 124-25. Again, the second amended complaint does not specify which of the two transactions at issue are associated with this count.  The defendants contend that this count must be dismissed because the plaintiff "has alleged no specific facts that indicate Defendants have engaged in unfair, unconscionable, or deceptive practices," incorporating its argument with respect to Count XIII by reference, and the claim has not been pled with

---

[11] If this count is intended to reach the 2004 transaction as well, the version of the MCCC then in effect used the term "credit services organization" where the current version uses "loan broker."  The definition of the two terms remains the same in all ways that are relevant to this case.

particularity as required due to its nature as "essentially a claim of fraud."  Motion at [22].  They also assert that T&M and Holt "were not providing brokerage services with respect to the February 2007 transaction" and section 10-401 applies only to consumer loan brokers.  *Id*.

The plaintiff responds that she is not required to plead the existence of deceptive practices under the MCCC with particularity and that she has in general alleged sufficient facts to support her claim.  Opposition at 26.  She reiterates her argument that the 2007 transaction was not a commercial loan, thereby apparently agreeing with the defendants that this count concerns only the 2007 transaction.  *Id*. at 26-27.  Finally, she notes that section 10-401 applies to loan officers like Holt as well as to loan brokers.  *Id*. at 27.

Section 10-401 by its terms applies to loan brokers.  9-A M.R.S.A. § 10-401 (Supp. 2007).  For the reasons discussed above in connection with Count XVII, the second amended complaint does not contain sufficient factual allegations to allow a reasonable factfinder to conclude that either T&M or Holt acted as a loan broker with respect to the 2007 transaction.  The defendants are entitled to dismissal of Count XVIII.

## O.  Other Issues

Before concluding, the defendants offer another argument for dismissing Counts I-III and V-VII, at the end of their memorandum of law.  Motion at [23]-[24].  Because I have already recommended dismissal of these counts, I do not reach this argument.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss be **GRANTED** as to Counts I-III, V-VIII, XI, XVII-XVIII and as to those portions of Count

XIII that are based on paragraph 107(a) and (d) of the second amended complaint and otherwise **DENIED**.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*


Dated this 18th day of June, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
